# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2021

Lyle W. Cayce
Clerk

No. 21-10198

Fisseha Gezu,

*Plaintiff—Appellant*,

*versus*

Charter Communications,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-1476

Before Owen, *Chief Judge*, and Jones and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

Fisseha Gezu appeals the district court's grant of Charter Communications's motion to compel arbitration and to dismiss under Fed. R. Civ. P. 12(b)(3). Finding no error, we affirm.

No. 21-10198

## I.

Gezu worked for Charter from December 2007 to May 2019.[1]  On October 6, 2017, Charter sent an email to all active, non-union employees announcing a new employment-based legal dispute resolution program dubbed Solution Channel (the "Program").  The pertinent part of the email stated:

> In the unlikely event of a dispute not resolved through the normal channels, Charter has launched *Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration.

> By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim.... Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled. Instructions for opting out of *Solution Channel* are also located on Panorama.

The email also hyperlinked the term "Solution Channel" to send recipients to Charter's intranet, where additional information on the Program and opt-out instructions were available.

The arbitration agreement, which was available in full on Charter's intranet, required arbitration of

> all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-

---

[1] Gezu initially worked for Time Warner Cable; Charter purchased Time Warner Cable in 2016.  For ease of reference, we simply refer to Gezu's employer as Charter.  Gezu does not dispute that he was employed by Charter during the time relevant to this case.

employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: . . . unlawful discrimination or harassment (including such claims based upon race, color, national origin, sex, pregnancy, age, religion, sexual orientation, disability, and any other prohibited grounds), [and] claims for unlawful retaliation . . . .

These provisions in mind, we turn to the actions leading to this lawsuit and the relevant procedural history.

During his employment, Gezu allegedly suffered discrimination based on his race and national origin. According to Gezu, Charter did not take any action to address the discrimination despite being made aware of it. Instead, Charter ultimately terminated Gezu on May 8, 2019, based on what Gezu alleges were pretextual reasons. As a result of these events, Gezu filed the underlying complaint against Charter on June 8, 2020. Proceeding *pro se*, he asserted claims under Title VII of the Civil Rights Act and 42 U.S.C. § 1981.

In response, Charter moved to compel arbitration and to dismiss under Rule 12(b)(3), contending that Gezu and Charter were parties to a binding arbitration agreement. Charter attached various exhibits to its brief in support of its motion, including, among other things, a declaration of John Fries, its Vice President of HR Technology. Gezu responded in opposition and moved to strike Fries's declaration. According to Gezu, no consensual arbitration agreement existed and Fries's declaration was inadmissible because it was not sworn or notarized. Charter filed a reply in support of its motion and a response in opposition to Gezu's motion to strike, attaching a declaration of Daniel Vasey, Charter's senior director of records

No. 21-10198

management and eDiscovery.[2]    Gezu then filed a second response to Charter's motion to compel arbitration and dismiss, which Charter moved to strike as an unauthorized surreply.

Ultimately, the magistrate judge entered her findings, conclusions, and recommendation in favor of granting Charter's motion to compel arbitration and to dismiss.  The magistrate also denied Gezu's motion to strike Fries's affidavit and granted Charter's motion to strike Gezu's second response to Charter's motion.  Gezu filed objections to the magistrate's recommendation, but the district court overruled the objections and entered an order accepting it.  The district court then entered a judgment granting Charter's motion to compel arbitration and dismissing the action without prejudice to Gezu's right to demand arbitration.  Gezu timely appealed.

Gezu primarily contends that the district court erred by adopting the magistrate's recommendation to grant Charter's motion to compel arbitration and to dismiss under Rule 12(b)(3).  Gezu also asserts that the court erred by (1) finding Fries's declaration admissible; (2) not seeking responses to a list of questions that Gezu requested the court ask of Charter; (3) accepting new evidence, i.e., Vasey's declaration, presented for the first time in Charter's reply brief; and (4) granting Charter's motion to strike his second response (the surreply) to Charter's motion to compel.  We address these issues in turn.

---

[2] In his declaration, Vasey stated that a copy of the October 6, 2017 email was sent to Gezu's Charter email address.  He also stated that Gezu opened the email between October 6, 2017, and the November 5, 2017 opt-out deadline.  Vasey attached copies of the relevant email receipt and email click data to his declaration.

No. 21-10198

## II.

*A. Grant of Charter's Motion to Compel and Dismiss*

We review *de novo* a district court's grant of both a motion to compel arbitration and a Rule 12(b)(3) motion to dismiss. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009).

Determining whether a party should be compelled to arbitrate claims requires a two-step inquiry. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Step one focuses on "contract formation—whether the parties entered into *any arbitration agreement at all*." *Id.* Step two "involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id.* Our analysis for both steps is governed by Texas law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[3] Under Texas law, "[a]rbitration agreements between employers and their employees are broadly enforceable." *Kubala*, 830 F.3d at 202. When, like here, an at-will employee is "not initially subject to an arbitration agreement" with his employer, but one is later imposed, the question becomes "whether the arbitration agreement [is] a valid modification of the terms of his employment." *Id.* at 202–03.

To show that such an agreement is a valid modification, the employer must demonstrate that the employee "(1) received notice of the change and (2) accepted the change." *Id.* at 203 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)). An employer demonstrates notice by proving "that

---

[3] Because Charter employed Gezu in Texas, the parties agree that Texas law applies. For contract cases, "Texas follows the 'most significant relationship test' set out in the Restatement (Second) of Conflict of Laws § 6 and § 145." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)).

No. 21-10198

[it] unequivocally notified the employee of definite changes in employment terms." *Halliburton*, 80 S.W.3d 566 at 568 (quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)). And "acceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work." *Kubala*, 830 F.3d at 203.

Here, Gezu urges that he did not "agree" to arbitrate his claims against Charter.[4] However, the record shows a valid modification to his employment contract—i.e., notice and acceptance. On October 6, 2017, Charter sent an email notice to Gezu of its new Program aimed at "efficiently resolv[ing] covered employment-related legal disputes *through binding arbitration*." (Emphasis added). The email stated that by participating, the recipient and Charter "both waive[d] the right to initiate or participate in court litigation . . . involving a covered claim" and that recipients "would be automatically enrolled in the Program *unless* they chose to "opt out of participating . . . within . . . 30 days." This language, along with the referenced links to additional information about the Program provided in the email, was sufficient to notify Gezu unequivocally of the arbitration agreement. *See Kubala*, 830 F.3d at 203 (finding valid notice through a meeting in which employer announced a new policy requiring employees to arbitrate employment disputes).

---

[4] Gezu mistakenly asserts that the relevant question before the court is whether the parties *entered* a binding contract. But as stated *supra*, due to Gezu's pre-existing at-will employment contract, the issue before the court is whether the arbitration agreement was a valid *modification* of the terms of his employment. Although Gezu asserts in his appellate reply brief that "there is no pre-existing contract between me and Charter," this assertion is forfeited. *United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016) ("[A]ny issue not raised in an appellant's opening brief is forfeited.").

6

No. 21-10198

Moreover, Charter's valid notice is not frustrated by Gezu's assertion that he did not read the October 16, 2017 email.[5]  As noted by the district court, the mailbox rule comes into play when, like here, "there is a material question as to whether a document was actually received."  *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (quoting *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007)).  Under the mailbox rule, "[a] sworn statement is credible evidence of mailing" and creates a presumption of receipt.  *Id.*; *see also Custer*, 503 F.3d at 420 (quoting *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 964 (9th Cir. 2001)).  We agree with the district court that the declarations of Fries and Vasey—averring that Charter sent and that Gezu both received and opened the October 16, 2017 email—were enough to create that presumption here.[6]

Gezu fails to rebut the presumption that he received notice of the modification to his employment contract, so we next address whether he accepted it.  He did.  The October 6, 2017 email "conspicuously warned that employees were deemed to accept" the Program unless they opted out within 30 days.  *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006).  The email also provided recipients with directions on how to opt out.  Nonetheless, Gezu did not opt out of the Program and continued working for Charter for over a year until he was terminated in May 2019.  Accordingly,

---

[5] We construe this as an assertion that Gezu did not "receive" notice.

[6] As noted in Charter's brief, in reaching this conclusion, we align ourselves with several other courts that have enforced the Program's arbitration obligations in similar situations.  *See Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833 (N.D. Tex. Sept. 19, 2019); *Hughes v. Charter Commc'ns, Inc.*, No. 3:19-cv-01703-SAL, 2020 WL 1025687 (D. S.C. Mar. 2, 2020); *Harper v. Charter Commc'ns, LLC*, No. 2:19-cv-01749, 2019 WL 6918280 (E.D. Cal. Dec. 19, 2019); *Moorman v. Charter Commc'ns, Inc.*, No. 18-cv-820-wmc, 2019 WL 1930116 (W.D. Wis. May 1, 2019); *Castorena v. Charter Commc'ns, LLC*, No. 2:18-cv-07981-JFW-KS, 2018 WL 10806903 (C.D. Cal. Dec. 14, 2018).

the district court correctly concluded that Gezu accepted the terms of the Program. *See Garrett v. Cir. City Stores, Inc.*, 449 F.3d 672, 675 n.2 (5th Cir. 2006); *Dillard*, 198 S.W.3d at 780.

Because Charter sufficiently demonstrated that Gezu both received notice of and accepted the modification to his employment contract, a valid agreement to arbitrate employment-related disputes exists between Gezu and Charter. And because Gezu does not assert on appeal that *his particular claims* are not covered by the arbitration agreement, we affirm the district court's grant of Charter's motion to compel arbitration.

We likewise affirm the district court's grant of Charter's Rule 12(b)(3) motion to dismiss. Although Gezu generally asserts that the district court erred in granting Charter's motion, he does not contend that Rule 12(b)(3) is an improper avenue for dismissal.[7] Further, to the extent the district court interpreted Gezu's response to Charter's motion to raise new allegations under the Texas Deceptive Trade Practices Act (DTPA) or the Fair Labor Standards Act (FLSA), we find no error in the court's conclusion that allowing Gezu to amend his complaint to include such claims would be futile. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) ("[A] district court need not grant a futile motion to amend."). As noted by the district court, "[t]he DTPA protects consumers" and "Gezu was an employee of Charter, not a consumer." Along the same lines, the district court correctly reasoned that the FLSA "focuses on wages—minimum hourly rates and overtime pay," and "Gezu offer[ed] no evidence that Charter required or even

---

[7] *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) ("[O]ur court has treated a motion to dismiss based on a forum selection clause as properly brought under Rule 12(b)(3) (improper venue) .... And, other circuits agree that a motion to dismiss based on an arbitration or forum selection clause is proper under Rule 12(b)(3)." (citations omitted)).

encouraged him to read the [October 16, 2017] email outside of working hours."

### *B. Gezu's additional assertions of error*

The additional issues raised by Gezu also fail. First, Gezu asserts that the district court erred by finding Fries's declaration admissible "because it was not sworn and notarized." However, as noted by the district court, and in Gezu's own brief, "28 U.S.C. § 1746 . . . permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). In his declaration, Fries "declare[d] under penalty of perjury under the laws of the United States of America that [his averments were] true and correct." Fries also signed the declaration. The district court thus did not err in finding Fries's declaration admissible.

Gezu next contends the district court erred by not seeking responses to a list of questions that Gezu requested the court ask of Charter. However, Gezu did not serve Charter with discovery requests pursuant to the Federal Rules of Civil Procedure, and Gezu fails to direct this court to any authority supporting his position that he was entitled to have either the magistrate judge or district court do so for him. Accordingly, Gezu has effectively abandoned this issue, and we will not address it further. *City of Austin v. Paxton*, 943 F.3d 993, 1003 n.4 (5th Cir. 2019); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993); *see also* Fed. R. App. P. 28(a)(8)(A) ("[T]he appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . .").

Lastly, Gezu contends that the district court erred in considering Vasey's declaration, which was submitted as an exhibit to Charter's reply in

support of its motion to compel arbitration and to dismiss, and in striking Gezu's second response (a surreply) in opposition to Charter's motion to compel arbitration and to dismiss. We disagree.

Gezu did not file a motion to strike Vasey's declaration before the district court.[8] And "[a] party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).[9] As to Gezu's second response to Charter's motion, the district court did not abuse its discretion in granting Charter's motion to strike the surreply. *See Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007) ("This court reviews a motion to strike for abuse of discretion."). The district court correctly noted that "[n]either the local rules of [the district] court nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right." *Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 890 (N.D. Tex. 2012); *see also* N.D. TEX. LOC. CIV. R. 7.1. Because the rules do not provide for surreplies as a matter of right, the district court only accepts such filings "in exceptional or extraordinary circumstances." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) (mem.). Because we discern no abuse of discretion in the

---

[8] In fact, Gezu relied on Vasey's declaration to support his own contentions in his objections to the findings, conclusions, and recommendation of the magistrate judge.

[9] Even assuming that Gezu did not forfeit this argument, we cannot say that the district court erred in considering Vasey's declaration. "The purpose of a reply brief under local rule 7.1(f) is to rebut the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 773 (N.D. Tex. 2008) (internal quotation marks and citation omitted). As part of his response to Charter's motion to compel arbitration and dismiss, Gezu submitted an affidavit, stating that he did not recall opening the October 16, 2017 email at issue. Charter included Vasey's declaration—providing evidence that Gezu had in fact opened the email—as part of its reply in rebuttal to Gezu's assertion.

No. 21-10198

district court's conclusion that Gezu had "not shown the existence of any extraordinary circumstances that necessitate[d] the filing of a surreply," this issue lacks merit.

\*      \*      \*

For the foregoing reasons, the district court's judgment is

AFFIRMED.